UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ERIC WAYNE MUSICK, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 3:25-cv-180-MJD |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM AND ORDER

Plaintiff Eric Wayne Musick ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his disability insurance benefits ("DIB") [Doc. 1].[1] Plaintiff filed a brief in support of his claims on August 29, 2025 [Doc. 15]. The Commissioner filed his response on February 19, 2026 [Doc. 25]. Plaintiff did not file a reply and the time for doing so has now passed. Therefore, this matter is ripe for review. For the reasons stated below, (1) Plaintiff's request for relief [Doc. 1] will be **DENIED**, and (2) the Commissioner's request that the administrative law judge's ("ALJ") final decision denying benefits be affirmed [Doc. 25] will be **GRANTED**.

## I.     ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 9 ("Tr.")], Plaintiff protectively filed a Title II application for DIB on March 6, 2024, alleging disability beginning March 12, 2024 (Tr. 213–

---

[1] Plaintiff's cause of action lists a claim for Supplemental Security Income benefits ("SSI") [Doc. 1 at Page ID # 2]. However, this statement appears to be in error, as Plaintiff's application indicates he did not file for SSI (Tr. 217). Further, subsequent briefing and the decision also do not refer to any claim for SSI benefits [*See* Doc. 15; Doc. 25; *see also* Tr. 217].

218).[2] Plaintiff's claims were denied initially and on reconsideration at the agency level (Tr. 95–107, 109–121). Plaintiff requested a hearing before an ALJ (Tr. 137–38). The hearing was conducted in person on January 30, 2025, in Kingsport, Tennessee (Tr. 40–69).

On February 5, 2025, the ALJ found Plaintiff had not been under a disability, as defined in the Social Security Act, at any time between his alleged onset of disability date (March 12, 2024) and the date of the ALJ's decision (February 5, 2025) (Tr. 21). The ALJ found that Plaintiff was not disabled for purposes of his DIB claims (Tr. 35). The Appeals Council denied Plaintiff's request for review on March 5, 2025 (Tr. 4–9), making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action on April 28, 2025 [Doc. 1].

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born on May 13, 1972 (Tr. 217), making him 51 years old on the alleged onset of disability date, which is considered an individual "closely approaching advanced age." 20 C.F.R. §§ 404.1563 and 416.963. He has at least a high school education and can communicate in English (Tr. 262, 264). He has no past relevant work (Tr. 34).

### B. Medical Records

In his initial March 2024 Adult Disability Report, Plaintiff alleged disability due to the following: heart disease, diabetes type 2, gastroenteritis, high cholesterol, high blood pressure, severe acid reflux, PTSD, anxiety, lower leg pain, and knee pain (Tr. 263). In his subsequent Adult Disability Report, dated June 6, 2024, Plaintiff indicated that he had an "increase in pain and increase in unstable mood" since his initial report regarding his medical conditions, but that he did

---

[2] Plaintiff previously filed a Title II application on September 6, 2022, which was denied by an ALJ in a written decision on March 11, 2024 (Tr. 70–93).

2

not have any new physical or mental conditions (Tr. 294). Plaintiff also indicated that there had been a change in his daily activities due to his physical or mental conditions, stating "Range of motion is limited. Due to mental state, does not care to be around people. Tends to get angry easily." (Tr. 296). In his final Adult Disability Report, dated July 18, 2024, Plaintiff indicated that there was no change in his physical or mental conditions and no change in his daily activities due to his physical or mental conditions (Tr. 307–309). While there is no need to summarize all the medical records herein, relevant records have been reviewed.

### C. Hearing Testimony

At the hearing held on January 30, 2025 (the "Hearing"), Plaintiff and vocational expert Jo Ann Bullard ("VE") testified. Plaintiff was represented by Attorney Chad Napier. The Court has carefully reviewed the transcript of the Hearing (Tr. 39–60).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

20 C.F.R. § 404.1520(a)(4)(i–v); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010).

**B.     The ALJ's Findings**

At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 12, 2024, the alleged onset of disability date (Tr. 23). At step two, the ALJ found Plaintiff had the following severe impairments: "osteoarthritis, degenerative disc disease, heart disease, obesity, post-traumatic stress disorder (PTSD), anxiety disorder, and depressive disorder" (Tr. 23).

4

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ also found that Plaintiff's mental impairments, considered singly and in combination via "Paragraph B" criteria, did not meet or medically equal the criteria of listings 12.04, 12.06, or 12.15 (Tr. 22), each of which would require one extreme limitation or two marked limitations (Tr. 22). The ALJ found Plaintiff had a moderate limitation with regard to remembering or applying information; a moderate limitation with regard to interacting with others; a moderate limitation with regard to concentrating, persisting, or maintaining pace; and a moderate limitation for adapting or managing himself (Tr. 25). The ALJ also considered "Paragraph C" criteria and determined that the evidence failed to establish the presence of a mental disorder that qualified (Tr. 26).

Next, taking all this information into consideration, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

- He can frequently climb ramps and stairs, stoop, kneel, crouch, crawl and balance (as defined in the Dictionary of Occupational Titles and the Selected Characteristics of Occupations).

- He can occasionally climb ladders, ropes, or scaffolds and cannot perform work involving exposure to extreme hot temperatures (defined as over 90 degrees Fahrenheit) or extreme cold temperatures (defined as under 30 degrees Fahrenheit).

- He can understand, remember and carry out simple instructions on a sustained basis, can use judgment to make simple work-related decisions, and can adapt to occasional changes in a routine work setting.

- Further, he can maintain concentration and persistence for at least 2 hours at a time throughout an 8-hour workday with regular breaks, he should not perform work requiring a specific production rate (such as assembly line work or work that requires daily quotas) and can perform work that has no tandem tasks (defined as tasks required to be performed with at least one other coworker contemporaneously, such as an assembly line).

5

- Finally, with "interaction" being defined as meaning "oral communications" in the following limitations: he is limited to occasional interaction with the public that does not involve adversarial type activities, such as job tasks that require addressing customer complaints, he can have occasional interaction with coworkers, and after an initial training period, occasional interaction with supervisors.

(Tr. 26) (formatted for clarity).

At step four, the ALJ found Plaintiff had no past relevant work pursuant to 20 C.F.R. § 404.1565 (Tr. 33). At step five, the ALJ found there were light exertion and unskilled occupations with jobs existing in significant numbers in the national economy available to a person with Plaintiff's RFC, including: (1) retail marker (DOT 209.587-034) with an SVP of 2 with approximately 250,300 jobs available in the national economy; (2) garment sorter (DOT 222.687-014) with an SVP of 2 with approximately 118,800 jobs available in the national economy; and (3) vending machine attendant (DOT 319.464-014) with an SVP of 2 with approximately 132,000 jobs available in the national economy (Tr. 34). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between his alleged onset of disability date and the date of the ALJ's decision (Tr. 35).

## IV.  ANALYSIS

Plaintiff argues the ALJ's decision is not supported by substantial evidence. As a result, he contends the decision should be vacated and remanded for further administrative proceedings. Plaintiff asserts this relief is justified due to the following alleged error:

1. The Commissioner erred as a matter of law by failing to build a logical bridge between the medical evidence of record and the RFC determination that distinguished Plaintiff's social interaction limitations with supervisors "during" *versus* "after" an initial training period.

[Doc. 15 at Page ID # 1050] (emphasis in original).

6

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

A court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). A court may not,

however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant. *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (assignments of error not made by claimant waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

### B. Residual Functional Capacity ("RFC")

A claimant's RFC is the most they can do—not the least—despite their impairments. 20 C.F.R. § 404.1545(a)(1); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155–56 (6th Cir. 2009). The RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). An ALJ is responsible for determining a claimant's RFC after reviewing all the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). An ALJ develops the RFC based on all relevant evidence, including the claimant's subjective statements about his limitations and medical opinion evidence. *See* 20 C.F.R. §§ 404.1592, 404.1545.

Plaintiff raises three issues regarding the RFC. First, Plaintiff argues that "[t]he ALJ's 'training period' distinction runs contrary to credited medical opinions and is unsupported by the record as a whole, lacking any implicit or explicit logical bridge." [Doc. 15 at Page ID # 1058]. Second, Plaintiff argues that "[t]he ALJ erred by accepting the vocational expert's testimony despite containing 'significant mistakes' and contradictions." [*Id.* at Page ID # 1063]. Third,

Plaintiff argues that "[t]he ALJ's inaccurate statements about the requisite ability to complete a training period requires remand." [*Id.* at Page ID # 1066]. The Court will address those arguments in turn.

### i. The ALJ's "Training Period" Carve-out

With regard to Plaintiff's mental limitations under step three, the ALJ evaluated Plaintiff's alleged mental impairments pursuant to 20 C.F.R. § 404.1520a, rating Plaintiff's degree of functional limitation under Paragraph B criteria in four areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). Applying the five-point scale in C.F.R. § 404.1520a(c)(4), the ALJ found Plaintiff had a moderate limitation with regard to remembering or applying information; a moderate limitation with regard to interacting with others; a moderate limitation with regard to concentrating, persisting, or maintaining pace; and a moderate limitation for adapting or managing himself (Tr. 25). Plaintiff does not dispute these findings, but takes issue with the application of said findings to the limitations in the RFC [Doc. 15 at Page ID # 1058–63].

Specifically, Plaintiff argues that his moderate limitation with regard to interacting with others is not reflected in the following RFC limitation, because the RFC limitation includes an initial training period carve-out related to interaction with supervisors:

- Finally, with "interaction" being defined as meaning "oral communications" in the following limitations: he is limited to occasional interaction with the public that does not involve adversarial type activities, such as job tasks that require addressing customer complaints, he can have occasional interaction with coworkers, **and after an initial training period, occasional interaction with supervisors.**

(Tr. 26) (formatted for clarity) (emphasis added). Plaintiff points out that this carve-out language was not included in the findings of the state agency consultants, whose opinions the ALJ found persuasive. The Commissioner responds that the ALJ had no obligation to mirror medical expert

9

findings in the RFC and that the RFC limitations were supported by substantial evidence in the record as a whole.

The ALJ is charged with assessing a claimant's RFC "based on all of the relevant medical and other evidence" of record. 20 C.F.R. § 416.945(a)(3). As a preliminary matter, an ALJ is not required to mirror his or her Paragraph B findings, from steps two or three, in the RFC. *See Shinlever v. Berryhill*, No. 3:15-CV-371-CCS, 2017 WL 2937607, at *3 (E.D. Tenn. July 10, 2017) (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00.A). Rather, "[a] claimant's RFC is formulated at steps 4 and 5, which "requires a more detailed assessment by itemizing the various functions contained in the broad categories found in paragraphs B and C." *Id.* (quoting Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *4 (July 2, 1996)). In other words, an ALJ is "not required to include a paragraph B finding as part of [his or] her RFC determination." *Gomez v. Comm'r of Soc. Security*, No. 1:22-cv-282-DCP, 2024 WL 925546, *5 (E.D. Tenn. Mar. 4, 2024) (citing *Bookmyer v. Comm'r of Soc. Security*, No. 1:22-cv-1004, 2023 WL 2643496, at *6 (W.D. Mich. Mar. 27, 2023)).

Important here, an ALJ need not adopt a medical opinion in its entirety even when finding it persuasive. *See Nassar v. Comm'r of Soc. Sec.*, 598 F. Supp. 3d 614 (E.D. Mich. 2022), *aff'd*, No. 22-1293, 2022 WL 17348838 (6th Cir. Dec. 1, 2022)*; see also Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (citing *Harris v. Comm'r of Soc. Sec. Admin.,* No. 1:13–CV–00260, 2014 WL 346287, at *11 (N.D. Ohio Jan. 30, 2014)) ("there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale").

However, while an ALJ is not required to adopt the verbatim wording of an opined limitation in the RFC finding, "[i]f the RFC assessment conflicts with an opinion from a medical

source, the [ALJ] must explain why the opinion was not adopted." *See Bowen v. Comm'r of Soc. Sec.*, No. 3:25-CV-1142, 2026 WL 479071, at *16–17 (N.D. Ohio Feb. 20, 2026), *report and recommendation adopted*, No. 3:25 CV 1142, 2026 WL 1261994, at *16 (N.D. Ohio May 8, 2026) (quoting Social Security Ruling ("SSR") 98-6p, 1996 WL 374184, at *7 (July 2, 1996)).

As set forth above, the ALJ made a finding that Plaintiff had a moderate limitation with regard to interacting with others and included limitations for only occasional interaction with the public and coworkers and, after an initial training period, only occasional interaction with supervisors (Tr. 26).[3] In so doing, the ALJ relied, in part, on the findings of the state agency psychological consultants. Dr. Hansmann, the state psychological consultant at the initial level, found that Plaintiff was moderately limited in his ability to interact with others (Tr. 98). Within that category, Dr. Hansmann found Plaintiff was moderately limited in his ability to interact appropriately with the general public and his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 104). Notably, Dr. Hansmann also found that Plaintiff was "not significantly limited" with regard to his "ability to accept instructions and respond appropriately to criticism from supervisors." (Tr. 104).[4] Dr. Hansmann then proposed the following RFC limitations:

> Plaintiff is able to interact [with] coworkers/supervisors/and general public on occasional basis that does not involve adversarial type activities such as job tasks requiring addressing customer complain[t]s.

---

[3] Plaintiff's argument that this language is ambiguous is without merit. As pointed out by the Commissioner, the plain language of the carve-out indicates that the lack of restrictions in interacting with supervisors during the initial training period means that there was no limitation during that period [Doc. 25 at Page ID # 1087].

[4] Dr. Hansmann also found Plaintiff not significantly limited in his abilities to ask simple questions or request assistance, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. (Tr. 104).

11

(Tr. 105). The ALJ found Dr. Hansmann's opinion to be persuasive (Tr. 32–33). At the reconsideration level, state agency psychological consultant Dr. Livingston made identical moderate limitation findings regarding social interaction, including the specific finding that Plaintiff was "not significantly limited" with regard to his "ability to accept instructions and respond appropriately to criticism from supervisors." (Tr. 112, 119).[5]

Here, the ALJ's mental RFC determination was supported by substantial evidence in the record and is not inconsistent with either of the state agency psychologists' opinions. Although the carve-out in the RFC *differs* from the limitations proposed by Dr. Hansmann, the carve-out relates to supervisors and is, therefore, aligned with both state agency opinions that Plaintiff was "not significantly limited" with regard to "his ability to accept instructions and respond appropriately to criticism from supervisors." (Tr. 104, 119). Furthermore, the carve-out is much less impactful than Plaintiff suggests given the VE's testimony that an initial training period for the unskilled positions at issue may not require more than occasional contact with supervisors (Tr. 68–68).[6]

Finally, even if this carve-out was in conflict with state agency psychologists opinions, the ALJ offers an explanation for the carve-out in the following sentence, supporting the findings with other substantial evidence in the record: "[i]n support of these findings, the undersigned again

---

[5] Dr. Livingston proposed the following RFC limitations: "contact with general public should be infrequent and at a superficial level, would do best working more [with] objects than people." (Tr. 119). The ALJ found Dr. Livingston's opinion persuasive only as to his finding that the claimant has moderate mental limitations, noting that his narrative finding included language that was not policy compliant (Tr. 33).

[6] As pointed out by the Commissioner, the VE identified more than 500,000 jobs in the national economy (Tr. 65). Reducing the number of jobs by half to account for the possibility of some jobs involving more than occasional supervisory interactions during a training period, there are still a significant number of jobs that Plaintiff could perform. *See Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (stating that 6,000 jobs nationwide easily fall within what courts have deemed significant).

12

notes the conservative treatment, reported stability of mental impairments, and general normal mental status examinations during the period at issue." (Tr. 31). The ALJ references mental health records that indicate Plaintiff's recent improvement and stabilization. (*See* Tr. 31 (citing Tr. 992–1009)). For example, a September 2024 mental health record cited by the ALJ states: "Endorses compliance with [mental health] medications, denies any problematic side effects, does not want to make any changes to medication at this time. Denies acute psychiatric concerns. Continues to participate in individual psychotherapy and reports this as beneficial." (Tr. 994). Later on in the decision, the ALJ further explains, citing to mental health records, that Plaintiff "has generally done well with his medication, his impairments were stable on his current medication regime, and outside of the occasional anxious presentation, his mental status examination were otherwise normal during the relevant period (Tr. 33 (citing Tr. 347–682, 691–813, 875–1009)).

The RFC is the most a Plaintiff can do. Here, the ALJ found that Plaintiff was capable of more than occasional interaction with supervisors during an initial training period and cited Plaintiff's stability in support of that decision. Accordingly, even if this language did conflict with the opinions of the medical consultants, the ALJ provided a sufficient explanation for this assessment which, at most, did not adopt the limitation as stated by the consultants verbatim. *See e.g., Bowen,* 2026 WL 479071, at *16–17.

### ii. The Vocational Expert's Testimony

Second, Plaintiff argues that the VE's testimony contained "significant mistakes" and was unclear as to the degree to which an employee would need to interact with supervisors during a training period [Doc. 15 at Page ID# 1063–66]. As a preliminary matter, Plaintiff's argument is moot given that the Court has found that the ALJ's RFC findings (to include the carve-out of no limitations on interactions with supervisors during an initial training period) were supported by

substantial evidence. In other words, the degree of interaction is immaterial because the Court has found that no limitation relating to supervisor interaction during the training period is reasonable.

Even if this argument were not moot, Plaintiff does not prevail because the testimony of the VE is straightforward. At the hearing, the ALJ asked the VE about the jobs that Plaintiff could perform given his RFC (which included the carve-out exception):

> Q: The first hypothetical, I would like for you to assume an individual with the same age and education as the claimant and no past work experience . . . . The individual is limited to occasional interaction with the public that does not involve adversarial type activities such as job tasks that require addressing customer complaints and can have occasional interaction with co-workers. And, after an initial training period, can have occasional interaction with supervisors. Ms. Bullard, in your opinion, would there be any jobs that the hypothetical individual could perform in the national economy?
>
> A: Yes, ma'am. These are light unskilled occupations with an SVP: 2. The first occupation is marker, retail, DOT 209.587.034, in the United States 250,300. Garment sorter, DOT 222.687.014, in the United States 118,800. Vending machine attendant, DOT 319.464.014, 132,000 in the US.

(Tr. 64–65).

> Plaintiff's attorney then asked the VE the following:
>
> Q: In your expert opinion, what—how would you classify the type of interaction with the supervisor during the initial training period or probation period?
>
> A: I could not do that because it's different in each particular case. Each supervisor is different. I can't assume that they would all be the same.
>
> Q: With the garment sorter job or a marker sorter job, would you opine that it would be more than occasional during the probation or during the training period?
>
> A: Are you—what are you asking, sir? I didn't quite get the question.
>
> Q: Would the interaction with the supervisor in garment sorter job or a marker sorter job be greater than occasional during that probational or that initial training period of time?
>
> A: I can't really answer that because like I said, each supervisor is different, and each workplace is different, and each occupation is different. The supervisors are

14

different in each particular thing because I can't assume as a whole that I could give you a cumulative answer.

Q: How did you answer the original hypothetical then that the interaction after the training period would be no more than occasional?

A: Because normally it's only occasional, but I can't be specific.

**Q: What is it normally during the training period?**

**A: It's generally occasional.**

Q: So there's no interaction usually between the training period and the—following the probational period of an interaction with a supervisor?

A: Could you repeat the question please?

Q: So there's no change in interaction with the supervisor from the time that a person is going through the initial training up until the time that they fully performed the job?

A: I can't say they wouldn't be, but I could say they usually. It's not—it depends upon how the person performs the job.

Q: Okay.

A: To be quite honest with you, I've seen it both ways.

(Tr. 66–68) (emphasis added).

This was the extent of the Plaintiff representative's examination of the VE. Plaintiff now argues that the VE's brief testimony was full of "significant mistakes" and contradictions [Doc. 15 at Page ID # 1063–66]. However, the VE plainly and consistently testified that the level of interaction between supervisors and employees during training periods varied but generally involved interacting with supervisors only occasionally (Tr. 67–68).

Furthermore, it was reasonable for the VE to opine that unskilled jobs, like those at issue here, would usually not require more than occasional interactions with supervisors during a training period as unskilled jobs involve only "simple duties that can be learned on the job in a

short period of time . . . and a person can usually learn to do the job in 30 days." 20 C.F.R. §

416.968(a). As pointed out by the Commissioner, training for unskilled SVP-two positions

involves very little: "[a]nything beyond short demonstration up to and including 1 month." [Doc.

25 at Page ID # 1093 (citing DOT, Appendix C, 1991 WL 6887021)].

### iii. The ALJ's Statements about the Relevancy of a Training Period

In the decision, the ALJ makes the following statement after her inclusion of the training

period clause:

> It is important to note that while it is included in the residual function capacity,
> training periods are not relevant to disability decisions because it relates to an
> employer's hiring practices. Claimants are not disabled if they can otherwise
> perform work but remain unemployed because of the hiring practices of employers
> (20 CFR 404.1566(a)(3) and (c) and POMS DI 25015.001).

(Tr. 31).

> At the hearing, the claimant's representative argued that there might be more than
> occasional interaction with supervisors during the initial training period. While it is
> noted in the residual functional capacity, the undersigned notes that training periods
> are not relevant to disability because it relate[s] to the employer's hiring practices.
> Claimants are not disabled if they can otherwise perform work but remain
> unemployed because of hiring practices of employers (20 CFR 404.1566(a)(3) and
> (c) and POMS DI 25015.001).

(Tr. 34).

Plaintiff is correct that multiple courts have disagreed with this position and ruled that

training period completion is "tantamount to the ability to keep a job." [Doc. 15 at Page ID # 1067–

68 (citing *Sczepanski v. Saul*, 946 F.3d 152 (2d Cir. 2020; *Gatliff v. Comm'r of Soc. Sec.*, 172 F.

3d 690, 694 (9th Cir. 1999); *Dix v. Sullivan*, 900 F.2d 135, 138 (8th Cir. 1990); *Pagan v. Bowen*,

862 F.2d 340, 350 (D.C. Cir. 1988); *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986);

*Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994); *Leitz v. Kijakazi*, No. 22-35356 (9th

16

Cir. 2023); *Sandy C. v. Kijakazi*, 2023 WL 2133835 (S.D. Ind., Feb. 21, 2023); *Jacob F. v. Kijakazi*, 2022 WL 1284475 (S.D. Ind., Mar. 30, 2022)].

The cases relied on by Plaintiff are outside of the Sixth Circuit and therefore are not binding on this Court. A review of district court cases in the Sixth Circuit reveals that some district courts have also adopted this position. *See Medhurst v. Comm'r of Soc. Sec.*, No. 5:25-CV-01862-RJS, 2026 WL 1758257, at *4–5 (N.D. Ohio June 18, 2026) (collecting cases) (noting that "the Sixth Circuit has not addressed whether probationary periods are relevant to the analysis at Step Five").[7] However, as pointed out by the Commissioner, other district courts in the Sixth Circuit (and elsewhere) find this approach to be "untenable." *See Wright v. Comm'r of Soc. Sec.*, No. 1:12CV1103, 2013 WL 3873947, at *3 (S.D. Ohio July 25, 2013) ("[U]nder Plaintiff's theory, every single time an individual is limited to superficial interaction with others, the result would require an ALJ to determine that the claimant is entitled to benefits since training for the job necessarily involves more than superficial interaction with others. Such a result is untenable").[8] Ultimately, the Sixth Circuit has not addressed this issue, and this Court does not find it necessary to do so here.

In this case, the ALJ's decision did not rest on an incorrect legal standard, as her inclusion of the carve-out was otherwise supported by substantial evidence. As set forth in Part IV(B)(i), the ALJ supported her RFC findings and the carve-out with an explanation based on the medical record (*see* Tr. 31) ("[i]n support of these findings, the undersigned again notes the conservative

---

[7] Unlike here, the cases adopting this position largely do not include carve-outs and instead center around VE testimony and whether potential probationary periods would exceed a Plaintiff's RFC limitations on social interaction. *See Medhurst*, 2026 WL 1758257 at *3.

[8] The *Wright* case is particularly notable as the RFC at issue included a carve-out for a thirty-day training period. *See Wright*, 2013 WL 3873947 at *2.

treatment, reported stability of mental impairments, and general normal mental status examinations during the period at issue."). The ALJ also cited to mental health records that indicate Plaintiff's improvement and stabilization. (Tr. 33) (explaining that Plaintiff "has generally done well with his medication, his impairments were stable on his current medication regime, and outside of the occasional anxious presentation, his mental status examination were otherwise normal during the relevant period").

Furthermore, the VE testified that the level of interaction between supervisors and employees during training periods varied but generally involved interacting with supervisors only occasionally (Tr. 67–68). The VE did not testify that any of the jobs at issue required interacting with supervisors more than occasionally. The VE also did not testify that Plaintiff would not be able to complete a probationary period. In other words, unlike many of the cases cited by Plaintiff, there was no evidence here that Plaintiff would have been unable to complete a training period. *See* note 7. Arguably, the ALJ effectively avoided any conflict between the RFC and potential training periods by including the carve-out, which the Court has found to be supported by substantial evidence. *See* Part IV(B)(i).

In other words, even if the ALJ did err in citing to this unsettled legal standard, there is no indication that it changed the outcome of the case, as the ALJ's ultimate decision was supported by substantial evidence and any citation error in this regard was harmless. *See Rabbers*, 582 F.3d at 654-55 (noting that harmless error analysis applies to administrative agency findings and that remand is not appropriate "unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal citations omitted). Remanding this case so that the ALJ could merely omit the paragraph regarding this legal standard would serve no purpose. As this Court and the Sixth Circuit have repeatedly held, where "remand

18

would be an idle and useless formality," court are not required to "convert judicial review of agency action into a ping-pong game." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 841, 547 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6 (1969) (plurality opinion)).

### C. The ALJ's Decision is Supported by Substantial Evidence

The record and the ALJ's decision indicate the ALJ properly evaluated Plaintiff's alleged symptoms, weighed the opinion evidence, and considered all the other evidence in the record to arrive at a well-reasoned RFC. The ALJ also properly relied on the testimony of the VE at steps four and five. In short, the written decision reflects a "logical bridge between the evidence and the conclusion that the claimant is not disabled." *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010) (citation omitted). Accordingly, the Court concludes the ALJ's decision is supported by substantial evidence.

Because the ALJ had "the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [Plaintiff's] subjective complaints," *Buxton*, 246 F.3d at 775, this Court's review is limited to whether the ALJ relied on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Comm'r of Soc. Sec.*, No. 21-1384, 2022 WL 740692, at *2 (6th Cir. Jan. 4, 2022) (quoting *Biestek*, 139 S. Ct. at 1154). In assessing Plaintiff's RFC, the ALJ explained the evidence that supported her conclusion and why she considered certain evidence less persuasive, and the Court finds the ALJ's findings and conclusions are adequately supported. *See Schmiedebusch*, 536 F. App'x at 646 ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . ." (citation omitted)).

19

## V.  CONCLUSION

Accordingly, it is **ORDERED** that:

 (1) Plaintiff's request for relief [Doc. 1] is **DENIED**; and

 (2) the Commissioner's request that the final decision denying benefits be affirmed [Doc. 25] is **GRANTED**; and

 (3) this case is **CLOSED**.

SO ORDERED.

ENTER:

/s/ _____
MIKE DUMITRU
UNITED STATES MAGISTRATE JUDGE

20